UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:21-CR-19-REW-HAI-4 |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| JOHN L. STANTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*** *** *** ***

Defendant John L. Stanton, through counsel, moves for release pending appeal. *See* DE 345 (Motion). For the following reasons, the Court **DENIES** Stanton's request. Stanton has not met the requirements of § 3143 and § 3145(c).

**I.   Background**

This case centers on a tainted pain clinic and years of tainted prescriptions. In July 2021, a grand jury indicted Dr. Stanton for conspiring to unlawfully distribute controlled substances in violation of 21 U.S.C. § 846. *See* DE 74 (Superseding Indictment). The jury trial commenced on August 23, 2022. *See* DE 226 (Minute Entry). Mid-trial, citing *Giglio* problems with its disclosed expert, the United States endeavored to call a previously undisclosed expert, Dr. Timothy King. *See* DE 229 (Minute Entry). Applying Rule 16, the Court rejected the request and barred reliance on Dr. King in the United States's case-in-chief. *See* DE 230 (Minute Entry). The Court expressly did not rule either way on the distinct issue of rebuttal proof.

The Government rested following five days of proof. *See* DE 235 (Minute Entry). It requested and received permission for Dr. King to audit the defense case in anticipation of

possible rebuttal proof. *See id.* The defense case centered on Stanton's testimony. *See id.*; *see also* DE 238 at 5 (Witness and Exhibit List). After extensive argument from the parties, the Court tested for rebuttal subject matter and limned particular boundaries within which it would allow Dr. King to testify. The contours were clear, and Dr. King reacted only to what he and the jury had heard from Dr. Stanton's own testimony in court.[1] *See* DE 235.

On August 31, 2022, the jury found Stanton guilty under § 846. *See* DE 245 (Minute Entry). The Court remanded Stanton to custody, without objection post-verdict, given the dictates of § 3143. Stanton then moved for a new trial, centered on the Court's decision to permit Dr. King to testify as a rebuttal witness. *See* DE 266. The Court, fully assessing the merits, denied the motion. *See* DE 299. On April 17, 2023, the Court sentenced Stanton to 120 months' imprisonment. *See* DE 338 (Judgment). Again, Stanton did not object to the Court's post-sentencing remand. Stanton appealed the judgment, *see* DE 340 (Notice of Appeal), and now seeks bond while the matter pends before the Sixth Circuit. *See* DE 345. The United States responded in opposition, *see* DE 348, and Stanton replied, *see* DE 350.

II.   **Analysis**

"The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal." *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002) (citing *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988)). Indeed, because Stanton was convicted under the Controlled Substances Act for a violation carrying a maximum sentence of at least 10 years, detention is mandatory. *See* 18 U.S.C. §§ 3142(f)(1)(C), 3143(b)(2). The (b)(2) mandate governs, leaving only the narrow § 3145(c) portal available to Stanton. To obtain bail pending

---

[1] The Court focused on Rule 16, which, at the time of trial, imposed no disclosure duty with respect to rebuttal expert proof. The new version of Rule 16, which became effective in December 2022, has a disclosure requirement for rebuttal proof.

appeal, Stanton first must show (1) " by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community," (2) that "the appeal is not for the purpose of delay and raises a substantial question of law or fact[.]" *See* 18 U.S.C. § 3143(b)(1); 3145(c). "Under the Mandatory Detention Act of 1990, however, . . . those convicted of drug offenses with a maximum sentence of at least ten years in prison and those convicted of any offense with a maximum sentence of life imprisonment or death, are not eligible for release simply because they meet these requirements." *United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003) (citing 18 U.S.C. § 3145(c)). Thus, Stanton must also clearly show "that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c).

    a. **Flight Risk**

The parties agree that Stanton does not present a prospective danger to the community,[2] but dispute whether he is a flight risk. *See* DE 345 at 7; 348 at 7. The Court finds that Stanton has shown by clear and convincing evidence that he is not likely to flee. He is sixty-six years old, has strong localizing ties, and claims to suffer from physical limitations. *See* DE 350 at 2, 14 (stating that Stanton requires a walker because "his knee is so swollen and he is unable to bear weight on it"); *see also United States v. Walls*, No. 2-06-CR-192, 2008 WL 213886, at *4 (S.D. Ohio Jan. 23, 2008) (granting release for 58-year-old defendant with no criminal history "[g]iven his ties to his family, his physical condition, and the [non-violent] charges"). The United States argues that Stanton's net worth increases risk of flight; the Court agrees with the logic but is unpersuaded. *See United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding no flight risk despite purported access to offshore accounts because defendant "has been a life-

---

[2] The Court agrees. While Stanton's crime is serious, it is not one of violence. Further, given the licensure loss, he is unable to repeat the crime. Stanton otherwise has lived a law-abiding life.

3

long resident of central Ohio and his family ties are limited to Ohio and the Midwest generally"). Stanton had access to similar financial resources pretrial. Nonetheless, he was on bond until conviction—for a period of one year—and was compliant throughout. Further, the United States's argument that Stanton's conviction and sentence incentivize flight is universal and carries little weight here. *See* DE 348 at 7. While these factors have some bearing on the analysis, they do not outweigh the remainder of the record. Thus, as to flight risk, Stanton has met his burden.

### b. Substantial Question

To obtain bond on appeal, in addition to establishing that he does not pose a flight risk or danger to the community, Stanton must also show that his appeal raises a substantial question "likely" to result in reversal.[3] *See* 18 U.S.C. § 3143(b)(1)(B). An appeal raises a substantial question when it "presents a 'close question or one that could go either way'" and "the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985)).

Here, Stanton asserts that the admissibility of Dr. King's rebuttal testimony provides the requisite substantial question. *See* DE 345 at 8. He argues that the rebuttal testimony was not proper because the defense did not introduce "new evidence or theories" during its case-in-chief. *Id.* at 9. Stanton also avers that the appeal is likely to result in reversal because: (1) absent Dr. King's testimony, the United States would have failed to introduce adequate evidence to support a conviction; and (2) "the late disclosure of Dr. King hindered Dr. Stanton's ability to subject his

---

[3] The delay issue in (b)(1) is a non-factor, given the circumstances.

testimony to 'vigorous cross-examination.'" *Id.* at 11-12. The United States asserts that Stanton's testimony "unquestionably presented information that was subject to rebuttal proof." DE 348 at 11. It maintains that even if the Sixth Circuit finds that Dr. King's testimony was improperly admitted, reversal is unlikely because that proof "played a limited role in the jury's verdict." *Id.* at 12-13.

The Court previously conducted a full legal analysis on this question (prompted by Stanton's motion for a new trial) and rejected the argument. *See* DE 299. In the Court's view, on this argument, Stanton's appeal does not raise a close question. As the Court already found, while Stanton testified to facts, he also inarguably offered opinion proof on the practice of medicine and the propriety of his conduct as a clinic Medical Director and provider. For instance, he defended the temporal adequacy of his depicted six-minute patient exams, criticized the accuracy of UDT results, commented on medical record review and access, claimed that phentermine could test as methamphetamine, and opined about prescriber obligations and prescriptions applicable to specific GMA patients, such as Ghent, Waynick, and Brown. *See* DE 309 at 67, 80, 111-12, 136, 166-67 (Jury Trial Day 5 Transcript). This opinion testimony opened the door to rebuttal proof.[4]

"The district court has broad discretion to determine the scope of rebuttal in admitting evidence[.]" *United States v. Caraway*, 411 F.3d 679, 683 (6th Cir. 2005). While "a district court *may* limit the scope of rebuttal testimony to rebut new evidence or theories, 'it is not required to do so and it is not an abuse of discretion not to impose such a limit.'" *United States v. Riley*, 685 F. App'x 390, 395 (6th Cir. 2017) (emphasis in original) (quoting *United States v.*

---

[4] The Court does not recall the defense arguing the "new" evidence angle until the post-sentencing bond request. This further dilutes the force in this context. In any event, the contention overstates the law, as the Government notes, and the Court assured that any rebuttal offered fit within the proper rubric.

*Rayborn*, 495 F.3d 328 (6th Cir. 2007)).  Here, the Court, in its discretion, limited Dr. King's testimony to what he heard and perceived in the courtroom.  Indeed, "[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990) (quoting *United States v. Papia*, 560 F.2d 827, 848 (7th Cir. 1977)).[5]  Dr. King's testimony contradicted opinion points Stanton made during the defense's case-in-chief.  For example, he disagreed with Stanton's testimony that phentermine could test positive as meth, criticized the sufficiency of six-minute patient exams, and countered Stanton's claim that it is within the course of professional practice to continue prescribing once a patient tests positive for heroin, fentanyl, or meth.  For these reasons, and as the Court fully analyzed in DE 299, the admissibility of Dr. King's rebuttal proof is not a close question.

Though Stanton argues that Dr. King's testimony went outside the scope of the defense case, *see* DE 350 at 9, this is contrary to the record.  Stanton takes issue with several hypotheticals posed to Dr. King.  *See id.* at 9 nn. 3-6.  However, those hypotheticals elicited testimony that directly contradicted Stanton's proof.  For instance, Stanton challenges Dr. King's testimony regarding practitioner access to UDT testing.  *Id.* at n.3.  Dr. King described UDT testing as a "universal precaution" and emphasized the importance of access to these results.  DE 309 at 287.  This rebutted Stanton's earlier testimony that it was typical to have patient UDT results every other month (as opposed to every month), that he did not expect "a UDT result on

---

[5] Contrary to Stanton's claim, *see* DE 350 at 5, "real rebuttal evidence" is not limited to evidence that rebuts new evidence or theories.  "As defined by the Sixth Circuit . . . the Western District of Kentucky has explained that 'real' rebuttal evidence is 'evidence or expert opinion offered by a Plaintiff in response to a defense theory or proof that ordinarily would not be offered by the Plaintiff in its case-in-chief.'" *Aung v. State Farm Fire & Casualty Co.*, No. 3:17-CV-92-GFVT, 2020 WL 2089823, at *2-3 (E.D. Ky. Apr. 30, 2020) (quoting *Taylor v. Brandon*, No. 3:14-CV-0588-DJH, 2018 WL 3581142, at *2 (W.D. Ky. Jan. 30, 2018)).  However, "where . . . the evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal." *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981).

every patient every time[,]" and that he had UDT results for only between 30 and 50% of patients. *See id.* at 220-21. Stanton also complains that Dr. King testified about appropriate durations for patient visits. *See* DE 350 at n.4; *see also id.* at 288 (testifying that seeing 25 to 30 patients in an hour and a half to two hours is "not reasonable" and "outside the standard of care"); *id.* at 289 (testifying that seeing patients for six minutes is "insufficient"). This refuted Stanton's testimony that he reasonably spent roughly six minutes with each patient and, in that time, was able to "make sure the patients were stable, that they didn't have any acute changes that needed to be evaluated, and make sure that they were getting their medications[.]" *Id.* at 67-68. In short, Dr. King's testimony did not go beyond the defense's proof.

The Court, in its discretion, assessed the avenues Stanton opened and surveyed the lines for King's rebuttal role. These were carefully measured calls within the trenches of trial.

Even if the Sixth Circuit were to find that the Court erred in admitting Dr. King's rebuttal testimony, that would not likely result in reversal. Dr. King's testimony merely countered Stanton's. It was not the crux of the United States's case. Indeed, outside of Dr. King's testimony, the United States offered significant proof of a drug-diverting conspiracy. Its case-in-chief lasted five days and consisted of twenty witnesses—including former patients and the clinic's owner, Dr. Maccarone—and hundreds of pages of exhibits. *See* DE 238. The proof showed that Stanton and Maccarone operated the clinic at unusual hours, prioritized profit over compliance, and ignored wholesale pill counts and inconsistent drug tests (suggesting addiction and/or diversion). It also showed that a Kentucky-heavy roster of patients traveled and waited hours to be seen for only a few minutes, despite claiming to be in debilitating pain. Thus, setting Dr. King's testimony aside, there was considerable evidence to support a guilty verdict.

Further, as the Court earlier held, the Government wove expert proof into its case-in-chief. That included pharmaceutical opinions, the content and standards of the Tennessee regulatory matrix, Dr. Maccarone's damaging depictions, and what Dr. Stanton candidly conceded in statements given to an agent, pre-charge. The Court, after precluding use of Dr. King in the case-in-chief, denied Stanton's Rule 29 and found the evidence sufficient for conviction after the Government's case. The King fight centered only on rebuttal following Stanton's proof. Dr. King's cabined proof, again, did not make the case or supply the lynchpin to convict Stanton.[6]

Stanton briefly claims that his due process rights[7] were violated because he was unable to adequately cross-examine Dr. King. *See* DE 345 at 12. This argument is also unavailing. Though the United States disclosed Dr. King as a potential expert mid-trial, Dr. King's testimony was expressly limited to rebutting the defense's case-in-chief. *See Mathis v. Roa*, 793 F. App'x 367, 390 (6th Cir. 2019) ("To be sure, a party may call a previously undisclosed rebuttal expert after the opposing party's expert has testified—but only under limited circumstances."). Further, Stanton's counsel thoroughly cross-examined Dr. King and elicited testimony that bore on Dr. King's credibility. *See* DE 309 at 303-13. For instance, on cross, Dr. King testified that he was contacted about a week before trial, did not review discovery in the case, and had not actively seen patients in the last year. *See id.* at 303-307, 311-12. On this record, given the sequence, the state of the rules at the time, and the recognition of rebuttal standards, reversal is unlikely. *See United States v. Owens*, 108 S. Ct. 838, 843 (1988) (holding that the "Confrontation Clause

---

[6] Stanton wrongly suggests the Court did not take *Ruan v. United States*, 142 S. Ct. 2370 (2022), into account. The Court dealt with the *Ruan* impact pre-trial, during trial, and expressly in the instructions. *See, e.g.*, DE 307 at 4-8; 309 at 329-337; 310 at 94-95. The jury convicted Stanton under the *Ruan* standard.

[7] Of course, Stanton fully had access to his own expert proof. He elected against calling a retained expert, and the Court recalls no effort by Stanton to present surrebuttal expert proof.

8

guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (internal quotation marks omitted)).

### c. Exceptional Reasons

Finally, Stanton also argues that there are "exceptional reasons" to grant release pending appeal. *See* DE 345 at 13-14. An exceptional reason is "rare" or "out of the ordinary." *United States v. Miller*, 568 F. Supp. 2d 764, 774 (E.D. Ky. 2008). Stanton has the burden to clearly show exceptional reasons that detention would be inappropriate.

Here, Stanton argues that the merits of his appeal and his deteriorating physical health constitute exceptional reasons. *See* DE 345 at 13-14. The Court disagrees. As to the merits of Stanton's appeal, the Court already concluded that the appeal does not present a substantial question that is likely to result in reversal. While a legal reason can be an exceptional reason to grant bond, it must be stronger than a mere § 3143(b)(1) substantial question. *See Garcia*, 340 F.3d at 1021 ("When there appears to be an *unusually strong chance* that the defendant will succeed in obtaining a reversal of his conviction on appeal he may be able to demonstrate exceptional reasons for delaying the commencement of his sentence." (emphasis added)). This is especially logical in a (b)(2) case—Stanton faces mandatory detention, and is ineligible for (b)(1) release. If the gateway in § 3145(c) meant simply hitting the (b)(1) test on a legal issue, then (b)(2) would effectively be enervated. Stanton fails at both the (b)(1) and heightened § 3145(c) levels on the legal argument he forwards.

Regarding Stanton's physical health, he indicates that he now requires knee replacement surgery. He contends, without proof, that he cannot receive the procedure in prison. *See* DE 350 at 14; *see also* DE 355 (Dr. Kowalski Letter and Medical Report). However, the notion of a

9

person in his late 60's facing arthritis does not strike the Court as particularly unusual or uncommon. *See United States v. Carlson,* 17-CR-5188-RBL, 2019 WL 2140582, at *3 (E.D. Wash. May 16, 2019) (finding that defendant's poor health and need for hip replacement surgery did not constitute exceptional reasons); *cf. Miller*, 568 F. Supp. 2d at 776 (noting that "[f]atal illness of the defendant or the defendant's spouse or child" is "one example" of an exceptional circumstance). According to his physician, Dr. Kowalski, Stanton has been a candidate for knee replacement surgery since September 2020. *See* DE 355 at 2-3. Despite that, Stanton only now seeks to have the procedure. *See id*. Neither Stanton nor Dr. Kowalski indicates that Stanton has knee replacement surgery scheduled. *See id.*; *see also Carlson*, 17-CR-5188-RBL, 2019 WL 2140582, at *3 (rejecting bond pending appeal and noting that records "do not show that . . . [defendant's hip replacement] surgery was actually scheduled" for before incarceration). And while Dr. Kowalski himself may not be able to perform the surgery while Stanton is in custody, Stanton presents no evidence that he cannot receive the surgery *at all* unless he is released. Indeed, Stanton has not been placed in a BOP facility yet and the Court, in the judgment, specified that Stanton "receive a full medical assessment and screening that specifically addresses his need for a knee replacement surgery, and that he be given access to any and all necessary treatment." DE 338 at 2. BOP public information indicates that it has a program for treating knee arthritis, which includes a surgical option for qualifying inmates. *See Evaluation and Management of Osteoarthritis of the Hip and Knee*, BUREAU OF PRISONS, https://www.bop.gov/resources/pdfs/Osteoarthritis_of_the_Hip_and_Knee_CPG.pdf (Oct. 2015).

Lastly, Stanton did not object to detention after the verdict or at the end of sentencing. *See* DE 244 (Minute Entry); 335 (Minute Entry). And based on the record it does not appear that Stanton's physical health has significantly declined since either proceeding. In other words,

10

Stanton has been aware of his claimed need for knee replacement surgery since he was detained in August 2022 (indeed, it seems from 2020). The fact that he objects to detention post-sentencing based on a preexisting condition, after being detained for ten months, further counsels against the presence of an exceptional reason at this juncture.

### III. Conclusion

Thus, for the reasons above, the Court **DENIES** DE 345.

This the 8th day of June, 2023.

Signed By:
Robert E. Wier
United States District Judge